## Shelton *v.* Lundin.

[No. 6,669. Filed January 13, 1910.]

1. BROKERS.—*Compensation.*—*Agency.*—*Sales.*—A broker who has property for sale or exchange, and who brings the owner of the property and the purchaser together, an exchange or sale being effected, is entitled to his commission. p. 176.

2. BROKERS.—*Contracts.*—*Change of.*—*Commission.* — Where an owner specified, to his broker, certain terms of sale for his property, his subsequent change thereof on making a sale to the purchaser procured by such broker, cannot deprive such broker of his commission. p. 176.

3. CONTRACTS.—*Breach.*—*Special Findings.*—*Evidentiary Facts.*— Where a contract for the exchange of properties provided that if

one of the parties was unable to name a purchaser for certain property conveyed, then the contract should be "void and of no effect," a special finding merely showing that the party to the exchange who was to find a purchaser for said property informed such other party that he could not find a purchaser for the land involved in the trade, will be disregarded as evidentiary, especially where it is further shown that three days later the same parties closed the contemplated trade. p. 177.

4. BROKERS. — Discharge. — Contracts. — Rescission. —Where the owner of property employed a broker to effect a sale of property, and the purchaser that he secured entered into a contract of purchase, reserving a right to rescind, and he so rescinded, such rescission did not discharge the broker, nor deprive him of his right to a commission, where such persons three days later effected a sale on substantially the same terms. p. 177.

From Pulaski Circuit Court; *John C. Nye*, Judge.

Action by Morris Shelton against Charles J. Lundin. From a judgment for defendant, plaintiff appeals. *Reversed.*

*A. L. Courtright* and *H. A. Steis*, for appellant.
*Beeman & Foster*, for appellees.

COMSTOCK, J.—Appellant, plaintiff below, sued appellee to recover the sum of $100 for services rendered by him to appellee under an employment as a broker for the sale of certain personal property owned by appellee. Issues were formed and the cause was submitted to the court. Upon timely request, findings of facts were made and conclusions of law stated thereon, and judgment rendered in favor of appellee.

The only error assigned is that the court erred in its conclusions of law.

The following is a fair summary of the facts found: On October 17, 1905, defendant employed plaintiff in this cause to procure for him a purchaser for a stock of goods in the town of Knox, Starke county, Indiana, and in such sale and exchange he was to receive $2,500 in cash, and for which services defendant agreed to pay plaintiff the sum of $100. Pursuant to such employment plaintiff procured Sydney A.

Uncapher as a purchaser for the property, who, upon the same day, entered into a written contract with defendant for the purchase of said stock of goods, by the terms of which Uncapher agreed to sell and convey to said Lundin his equity in forty acres of land, at and for the price of $400, one lot in Summitville, Indiana, for $400, two lots in Chicago for $500, and eighty acres of land in Marshall county, Indiana. All the deeds mentioned in this item to be general warranty deeds, except the Marshall county land, which was to be a quitclaim deed from A. J. Uncapher and wife. Said Lundin agreed, in consideration of covenants of first party, to sell and transfer to said Uncapher all of said stock of drygoods and groceries in a building in the town of Knox, said goods to be invoiced at cost. He agreed to deliver possession of said stock of goods upon the following condition: $2,500 cash, to be paid at the time invoice of stock was begun. Said Lundin agreed further to lease to said first party his storeroom, shelving and counters for $25 per month for the period of one year, with privilege of renewing the lease for the further term of five years. The contract further states:

"It is understood and agreed by the parties that the eighty-acre tract named, known as the Rank farm, shall be sold to any purchaser named by the first party herein at $40 per acre, being in gross $3,200. Second party agrees to make to such purchaser his warranty deed for said eighty acres, and to give possession to such purchaser as early as may be. * * * If the first party is unable to name any purchaser according to the provisions of this item, then and in that event this contract shall be void and of no effect; otherwise to be in full force."

There are other conditions not necessary to be set out.

After the execution of the foregoing written contract, dated November 7, 1905, said Uncapher informed the defendant that he could not find or procure a purchaser for said land, and that thereupon said defendant and said Uncapher, by mutual consent and understanding, annulled said written contract, releasing each other therefrom.

At the time of the making of the contract between said Uncapher and the defendant, which is known as the first contract, the plaintiff was present, and knew of the conditions and provisions of said contract, and knew that said Uncapher reserved the right to annul the contract if he could not find a purchaser for the eighty-acre tract of land for the sum before named.

On November 10, 1905, Uncapher, after negotiating with defendant, entered into another written contract with him for the purchase of defendant's stock of goods, and upon which written contract said stock of goods was finally purchased and procured of the defendant herein. By the terms of said second contract, Uncapher agreed to convey by deed of general warranty the forty acres of land described in the first contract, and by deed of quitclaim the eighty acres of land in Marshall county, Indiana, known as the Rank farm, and to pay to said Lundin at the time of signing the contract $1,000 in cash. Said Lundin upon his part, in consideration of the covenants of the said Uncapher, set out, agreed to sell and transfer to Uncapher the stock of goods and groceries, being the same mentioned in the first contract, including all fixtures, except counters and shelving, and to deliver possession upon the terms and conditions as follows: A cash payment of $1,000; conveyance by warranty deed by the first party to the second party of the forty-acre tract; conveyance by quitclaim deed of the eighty-acre tract known as the Rank farm in Marshall county, Indiana. Said Lundin agreed to lease his storeroom, shelving, etc., upon the same terms as provided in the first agreement. It was further agreed that upon the signing of the contract the first party should procure for second party the quitclaim deed before named, for the Rank farm, and allow and pay to Lundin all necessary expenses and attorney fees and court costs to obtain possession of the Rank farm, and that Uncapher would pay all taxes now due and payable upon the lands described in item one; that he would assume and pay any and

all other liens of whatever kind upon said lands, and that Lundin would pay all liens or claims on account of stock of goods whether for purchase money or otherwise. Plaintiff took no part in any of the negotiations between the parties for the sale or exchange of said property after said written contract was annulled, and did not know of the proposition made by said Uncapher for the purchase of the property, nor of the making of said contract on November 10, 1905, but learned of said proposition and contract sometime thereafter. At the time of plaintiff's employment, and when he first went to Uncapher to sell him the stock of goods belonging to defendant, there had been no negotiations between defendant and Uncapher, but there had been, about four weeks prior thereto, negotiations between the defendant and Uncapher for the sale of said stock of goods to said Uncapher. Prior to the commencement of this suit the plaintiff asked the defendant for the commission claimed to be due him from the defendant, and the defendant refused to pay the same. The court concluded as follows: "That the plaintiff take nothing by this action."

When a broker who has property for sale or exchange is instrumental in bringing the owner of the property and the purchaser together, and an exchange or sale is effected by the parties in interest, he is entitled to his commission. *McFarland* v. *Lillard* (1891), 2 Ind. App. 160, 163, 50 Am. Stat. 234; *Barnett* v. *Gluting* (1892), 3 Ind. App. 415, 417; *Platt* v. *Johr* (1894), 9 Ind. App. 58; *Clifford* v. *Meyer* (1893), 6 Ind. App. 633, 642; *Vinton* v. *Baldwin* (1882), 88 Ind. 104, 45 Am. Rep. 447; *Fischer* v. *Bell* (1883), 91 Ind. 243, 244; *Cox* v. *Haun* (1891), 127 Ind. 325; *Storer* v. *Markley* (1905), 164 Ind. 535.

A change made by the vendor or by the vendee, altering the terms of the original contract, cannot deprive a broker of his rights. *McFarland* v. *Lillard, supra; Lawrence* v. *Atwood* (1878), 1 Ill. App. 217; *Bash* v. *Hill* (1871), 62 Ill. 216; *Adams* v. *Decker* (1889),

34 Ill. App. 17; *Plant* v. *Thompson* (1889), 42 Kan. 664, 22 Pac. 726, 16 Am. St. 512; *Stewart* v. *Mather* (1873), 32 Wis. 344; *Woods* v. *Stephens* (1870), 46 Mo. 555; *Keys* v. *Johnson* (1871), 68 Pa. St. 42.

The contract contains this provision:

"If the first party is unable to name any purchaser according to the provisions of this item, then and in that event this contract shall be void and of no effect."

3. There is no finding that Uncapher was unable to name any purchaser. The finding that "on November 7, 1905, said Uncapher informed the defendant that he could not find or procure a purchaser for said land" is the finding of an evidentiary and not an ultimate fact. The fact found is that on November 7, 1905, appellee and his vendor, by mutual consent, annulled the agreement, which negotiations could. not affect the rights of the broker.

The date of making the second agreement—November 10, 1905—and the date of the first—November 7, 1905— together with the property involved and the terms of the contract, almost, if not quite, compel the inference that the second contract was entered into to avoid paying to the appellant his commission. There is no finding that

4. appellant was discharged from his employment. The rescission of the first contract was not a discharge of appellant. The basis of appellant's right is that the sale, although under a modified agreement, was actually due to his work. The burden of showing that Uncapher was unable to name a purchaser was upon appellee.

Judgment reversed, with instructions to restate the conclusions of law and render judgment in favor of appellant.