

# THE ATTORNEY GENERAL

# OF TEXAS

Gerald C. Mann

**AUSTIN 11, TEXAS**

X~~MMMAX~~X~~WILSON~~X X
**ATTORNEY GENERAL**

Honorable Wm. Calvin Montgomery
Chairman, House Investigating Committee
Under H. S. R. No. 168
House of Representatives
Austin, Texas

Dear Sir:

Opinion No. O-5149

Re: Does the Speaker of House of Representatives have legal authority under H. S. R. No. 8 to pay from the Legislative Contingent Expense Fund the compensation for additional clerks for the School Census Division of the Department of Education?

We acknowledge receipt of your opinion request dated March 22, 1943, which reads as follows:

"As chairman of the House Investigating Committee assigned to examine and investigate the school Census Division of the Department of Education, especially with reference to money spent out of the Contingent Fund of the Legislature for employment of clerks in the School Census Division of the Department of Education, I am directed to request of you an opinion as to whether clerks assigned to the School Census in the Department of Education can be lawfully paid out of the Contingent Fund of the House?

"Senate Bill No. 1 of the Forty-Eighth Legislature makes the following appropriation for contingent expenses of the Legislature:

"'An Act making an appropriation of the sum of Three Hundred and Fifty Thousand Dollars ($350,000.00), or so much thereof as may be necessary, out of any funds in the State Treasury not otherwise appropriated, to pay the contingent expenses, and to pay the mileage and per diem of members and the per diem of officers and employees of the Regular Session of the Forty-eighth Legislature, and to pay any unpaid accounts or expenses

of the Forty-seventh Legislature; and declaring an emergency.'

"House Simple Resolution No. 8 provides for the appointment
of certain employees of the House of Representatives, and provides further
that the Speaker shall have the power to appoint extra employees whenever
in his judgment they are needed, and that each shall perform such duties as
the Speaker may require.

"For several years it has been the custom of the Legislature
to employ committee clerks and place them on the House of Representa-
tives pay roll for the purpose of working in the School Census Division of
the Department of Education. They are carried on the pay roll of the House
of Representatives and are paid out of the Contingent Fund of the Legislature,
but their employment is for the purpose of checking the school census under
the direction and supervision of employees for the Department of Education
in accordance with the Act providing for the checking and approving of the
annual school census by the Department of Education.

"Our committee has been appointed by a House resolution for the
purpose of determining whether this constitutes a proper expenditure from
the Contingent Fund of the Forty-eighth Legislature, as well as other mat-
ters concerning the nature and necessity of the work performed by these
clerks.

"Question: Do we have the legal authority to pay money out of the
Contingent Fund created by an Act of the Legislature, Senate Bill No. 1, for
the purpose of paying mileage, per diem, and contingent expenses of the
Legislature, for the employment of additional salaried help to work in the
Department of Education and perform services under the provisions of the
Act of the Legislature creating the School Census Division of the Department
of Education and providing for the annual checking and approving of the
school census ?"

That portion of House Simple Resolution No. 8 referred to in your
letter reads as follows:

"BE IT FURTHER RESOLVED, That it shall be the duty of
the Speaker, and he is hereby empowered, to dispense with the
services of any employee who, in his judgment, is not further
needed, or for misconduct of any employee; and he shall have
the power to appoint extra employees whenever in his judgment
it is needed. The duties of the employees heretofore mentioned

shall be such as are required by the Speaker of the House of Representatives, and he is hereby empowered to employ part-time employees, and to divide the duties, apportion the hours, and fix the pay of such part-time employees, within his discretion.

"Any of the employees may be excused by the Speaker for causes deemed by him sufficient; provided further, that any employee who shall absent himself without leave shall not receive any compensation for the time missed during his absence. The salaries of the employees shall begin when they are instructed to begin work by the Speaker."

The Appropriation Bill for the Executive and Administrative Departments of the State Government passed by the Forty-seventh Legislature contains an appropriation of $24,420.00 for the School Census Division of the Department of Education for the present fiscal year ending August 31, 1943. General and Special Laws, Acts of 47th Legislature, page 1151.

Following this appropriation and as a part of the Act is Section (15) b of the General Provisions, which reads in part as follows:

"The appropriations herein provided are to be construed as the maximum sums to be appropriated to and for the several purposes named herein, and the amounts are intended to cover, and shall cover the entire cost of the respective items and the same shall not be supplemented from any other sources; and, except as otherwise provided, no other expenditures shall be made, nor shall any other obligations be incurred by any department of this State . . . ." General and Special Laws, Acts 47th Legislature, page 1292.

This provision against supplementing the appropriations is broad enough, in our opinion, to prohibit the Legislature as one of the departments of this State from supplementing an appropriation by the indirect means of paying the salaries of additional employees who work for one of the other departments for whom an appropriation has been made, when there has been no bill passed authorizing an additional appropriation for the particular department.

We do not think that House Simple Resolution No. 8 was passed for the purpose of repealing Section (15)b of the General Provisions of the Departmental Appropriation Bill of the 47th Legislature. However, if such was the

purpose, it is our opinion that the attempted repeal was ineffective.

It is the settled rule in this State that a statute cannot be amended by a resolution. In Caples v. Cole, 129 Tex. 370, 102 S. W. (2d) 173, rehearing denied 129 Tex. 370, 104 S. W. (2d) 3, Mr. Justice Sharp speaking for the Supreme Court said:

"It is plain that the resolution not only undertakes to interpret or construe what the original act contained but also to read into said law words and intentions not expressed in the original act. Statutes cannot be amended in that manner. Resolutions play their part in our legislative history, and are often resorted to for the purpose of expressing the will of the Legislature, but statutes cannot be amended by resolutions." 102 S. W. (2d) 176.

In Humble Oil & Refining Co. v. State, 104 S. W. (2d) 174, error refused, the Austin Court of Civil Appeals said:

"A statute cannot be amended by a resolution. It must be amended by re-enactment and publication at length, and by an act or bill which is subject to the veto power of the Governor. Article 3, Sections 29, 30, 35 and 36 of the Constitution of Texas." 104 S. W. (2d) 185.

The custom of the Legislature in employing clerks to work for and under the supervision of the School Census Division of the Department of Education and in paying them out of the Legislative Contingent Expense Fund by putting them on the pay roll of the House of Representatives is also objectional on constitutional grounds.

In our opinion No. 0-4609 we have heretofore ruled that so much of House Bill No. 284, General and Special Laws of the 47th Legislature, page 880, which undertakes to give administrative powers to a "Joint Legislative Advisory Committee" created by the act, was unconstitutional. In that opinion we said:

"It is the function of the legislative branch of the government to make the laws; it is the function of the executive branch of the government to administer and execute those laws. In the statute under consideration, the Legislature of the State of Texas has undertaken not only to declare what the law shall be, which is clearly its

prerogative, but has also undertaken to clothe a portion of the membership of the Legislature, the Joint Legislative Advisory Committee, with the authority to execute and administer the law passed by the Legislature. Under Article 2, Section 1, of the Constitution of the State of Texas, the Legislature is powerless to clothe itself, or a portion of its members, with executive authority."

We are of the opinion that the speaker of the House of Representatives would have no greater power in this connection than an investigating committee appointed by him. The constitutional power of the Legislature to appoint investigating committees and pay their expenses and their compensation (when they are not members of the Legislature or other State officials) in order to get information requisite to the right use of the legislative power is implied from the powers expressly granted. Terrell, Commissioner v. King, 118 Tex. 237, 14 S. W. (2d) 786. This implied power, however, is limited by the constitutional provision which prohibits the Legislative Department from exercising any power properly attached to the Executive or Judicial Departments. Art. II, Sec. 1, Texas Constitution; People v. Tremaine (New York), 148 N. E. 822; Langever v. Miller, 124 Tex. 80, 76 S. W. (2) 1035. In the last case cited, the late Chief Justice Cureton speaking for the Supreme Court said:

"Under this division of governmental power it is now an established and fundamental principle of constitutional law that the executive cannot exercise either judicial or legislative authority; the judicial department cannot be clothed with executive or legislative power; and the legislative 'magistracy' cannot exercise the functions of either the Executive or the Judicial Departments. 12 Corpus Juris, p. 802, § 234 et seq. Corpus Juris, supra, declares: 'The separation of the powers was believed by Montesquieu, by Blackstone, and by American Constitution makers of the eighteenth century to be one of the chief and most admirable characteristics of the English Constitution.'

'A principle which is the very foundation of the government of the United States and of the several states must be deemed one essential to the preservation of the rights and liberties of the people, and should be thoughtfully and faithfully observed by all clothed with the powers of government."

Under the facts stated in your opinion request, we are of the view that the employment of the clerks mentioned is an administrative or executive duty imposed on the State Superintendent of Public Instruction, under Article 2820, Vernon's Annotated Civil Statutes and not a legislative function. The 47th Legislature adopted this view by the appropriation of $24,480.00 for the biennium for salaries of Clerks, Directors and Supervisors in the Census Division of the Department of Education and $24,360.00 for maintenance and miscellaneous expenses of the Census Division. (S. B. No. 423, General and Special Laws, 47th Legislature, p. 1151) and by an additional emergency appropriation of $6,000.00 to the Census Division in which it provided that "all moneys used in the checking of the census shall be paid out on an hourly basis; and provided that such compensation received for said hourly basis shall not exceed forty (40) cents per hour." H. B. No. 392, General & Special Laws, 47th Legislature, p. 469.

We, therefore, respectfully answer your inquiry in the negative on each of the grounds stated.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Fagan Dickson*

Fagan Dickson
Assistant

FD:BT

APPROVED MAR 27, 1943

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
By *BWB*
Chairman